## Hughes et al. v. Smith et al.

Daniel P. Dougherty, for trustees of fund, petitioners.

George A. Shutack, for American Legion, Frank Ferrara Post No. 172, claimant.

James C. McCready, for American Hose Company No. 1 of New Columbus, claimant.

Frank X. York, for Nesquehoning Hose Company No. 1, claimant.

THOMAS, P. J., June 27, 1931.—The trustees of the Nesquehoning War Chest Fund filed their bill in equity, setting forth that during the World War constant and unusual demands were made upon the people of the United States for the aid and support of its numerous "war charities." For the purpose of systematizing this extensive charitable enterprise and to assure the public that their gifts and subscriptions would be disposed of by competent local authorities a plan generally known as the "War Chest" was adopted in

many cities and communities of the United States, the general scheme of which was to provide a local committee, which undertook to solicit yearly or monthly subscriptions to a single fund, that fund to be fairly apportioned in war work, thus relieving the community of the annoyance and danger of promiscuous and repeated solicitations. The moneys thus apportioned among the "war charities" were used for the relief of the sufferers of the World War, for the aid and comfort of the army and navy of the United States and for other charitable purposes incidental to the war.

Sometime prior to June, 1918, a committe was organized in the village of Nesquehoning, said committee composed of John Hughes, John C. Corby, J. W. Norwood, Michael Hartneady and Eugene V. Bonner, for the purpose of carrying the scheme into effect. The committee solicited and received from the inhabitants of said village funds which were deposited in the First National Bank of said village of Nesquehoning and designated as the "Nesquehoning War Chest Fund," and moneys were paid from this fund from time to time to the "war charities," and upon the termination of the World War there remained a surplus of $6519.98. Demands were made upon them by the American Legion, Frank Ferrara Post No. 172 of Nesquehoning, the Nesquehoning Hose Company No. 1, Inc., and the Nesquehoning Playground Association, Inc., for the said moneys, and the bill prayed that a decree be made authorizing the said trustees to pay the said sum into court, and all parties interested who may be entitled to the fund to interplead. A decree was thereupon entered authorizing the trustees to pay said money into court and all parties interested to interplead. The Nesquehoning Hose Company No. 1, Inc., was made plaintiff, and Gilbert Smith, post commander, Lenious Marsden, financial officer, representing themselves and all other members of the American Legion, Frank Ferrara Post No. 172, defendants.

The Nesquehoning Hose Company No. 1, Inc., filed its claim, setting forth that the said Hose Company is a public charitable organization, and that it represented the same identical group of people who made possible the fund known as the "Nesquehoning War Chest Fund," and by reason of the charitable work, which the said Hose Company did among its members and for the community, it was entitled to the fund.

The American Hose Company No. 1, Inc., an intervening defendant, of New Columbus, which is a section of the village of Nesquehoning, filed its answer, setting forth that the citizens of said American Hose Company No. 1 of New Columbus contributed to the said War Chest Fund to the extent of about $1200 and praying the court to award said sum of $1200 out of said War Chest Fund to the said American Hose Company No. 1 of New Columbus for the purpose of affording better and safer protection to the property and lives of the citizens of New Columbus, Nesquehoning.

The Frank Ferrara Post No. 172 of the American Legion, hereafter referred to as the Post, filed its answer, setting forth that during the World War constant and unusual demands were made upon the people of the United States for the aid and support of its numerous "war charities," viz., American Red Cross, Young Men's Christian Association, Knights of Columbus, Young Men's Hebrew Association, War Camp Community Service, The Salvation Army, etc., and for the purpose of systematizing this extensive charitable enterprise a plan, generally known as the "War Chest," was adopted in many cities, towns and villages throughout the United States, the general scheme of which was to provide a local committee, which undertook to solicit yearly or monthly subscriptions to a single fund, that fund then to be distributed among the various recognized war relief agencies hereinbefore mentioned, and that prior to June, 1918,

said committee was organized in said village of Nesquehoning for the purpose of carrying into effect the said scheme in that community.

Said Post further made answer, setting forth that the American Legion was a corporation organized and existing under the laws of the United States of America and has fifty-eight departments, one in every state in the Union, the District of Columbia and others in the territorial possessions of the United States, and that the departments are further composed of posts within their respective areas. That the said Legion, through its national, state and post organizations, maintains service bureaus and committees to render aid in securing for all those who were in the military or naval service of the United States during the World War, irrespective of their membership in the American Legion, the benefits of all existing laws providing for compensation, hospitalization, war risk insurance and vocational training of those disabled in the service of their country, and praying that the funds in the custody of the court be transferred to the said Post, with the stipulation that the funds so received are to be used in the acquisition and furnishing of Post headquarters.

The pleading resolves itself into whether the Nesquehoning Hose Company No. 1, Inc., shall be awarded the fund, or the American Hose Company No. 1 of New Columbus, intervening defendant, such portion as the court may determine, or the said Post. The Nesquehoning Playground Association, Inc., withdrew any claim it may have had upon said fund. No other parties appeared or made claim, although proper notice by publication was given. . . .

### Discussion

The fund involved in this controversy was contributed for charitable uses. The original purpose was for the relief and support of the sailors and soldiers of the United States then enlisted and in active service in the World War. The war having ceased, the distribution of said fund has become impracticable and impossible. The purpose having become inoperative, the particular mode of administering this charity is to be exercised by the principles of equity under the cy pres doctrine.

In the case of the City of Philadelphia v. Girard's Heirs, 45 Pa. 9 (1863), the doctrine is defined as follows:

"The meaning of the doctrine of cy pres, as received by us, is, that when a definite function or duty is to be performed, and it cannot be done in exact conformity with the scheme of the person or persons who have provided for it, it must be performed with as close approximation to that scheme as reasonably practicable; and so, of course, it must be enforced. It is the doctrine of approximation, and it is not at all confined to the administration of charities, but is equally applicable to all devises and contracts wherein the future is provided for, and it is an essential element of equity jurisprudence."

The legislature has enacted this doctrine by the Act of April 26, 1855, P. L. 328, and the Act of May 9, 1889, P. L. 173, the provisions of which were included in the Act of May 23, 1895, P. L. 114.

The duty of the court is to ascertain which of the several claimants to this fund approaches nearest to the purpose of the donors.

The Post, which looks after the needs of the war veterans, whether they are members or nonmembers, in connection with compensation, disability, hospitalization, insurance, vocational training of disabled war veterans, tending to the relief of ex-service men and their families, conducting military funerals of ex-soldiers, establishing and participating in the ceremonies commemorating Memorial Day, is the claimant whose purpose approximately meets the scheme of the donors.

The prayer of the Post to have the moneys paid to it to erect headquarters does not appear to the court consistent with the object of the donors. The testimony discloses that the membership of the Post dwindles; at one period it had a membership of 115, then dropped to 75, and now is 84. How headquarters were to be supported and maintained, the testimony is silent. The dues at the present time do not meet the current expenses. No effort has been made to seek a location, to establish a fund for building, and, although headquarters may assist them in their several activities, yet the court is of the opinion that this fund should be used for the specific purposes for which the Post was organized and more in conformity with the uses the donors had in mind.

The fund in question should be awarded to a trustee in trust for the said Post, to be invested in good and safe securities, the interest arising therefrom to be paid to said Post semi-annually towards its expense in maintaining its service station, and such amounts from the principal sum to be paid from time to time to said Post, on order of said court, for the following uses, to wit, such expenses as may be reasonable (a) in conducting military funerals of ex-soldiers who die in the village of Nesquehoning or its adjacent territory; (b) in the ceremonies of Memorial Day; (c) in attending to the needs and relief of ex-service men and their families, or the needs of ex-service men for hospitalization or vocational training of those disabled.

### Decree nisi

Now, to wit, June 27, 1931, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

That the said fund be awarded the Mauch Chunk National Bank, in trust, for the Frank Ferrara Post No. 172 of the American Legion, to be invested in good and safe securities, and the interest arising therefrom to be paid to the said Post semi-annually for the purpose of maintaining a service station, and such sum or sums from the principal amount may be paid from time to time, on order of court, as may be needed for the following purposes: (a) In conducting military funerals of ex-soldiers who die in the village of Nesquehoning or its adjacent territory; (b) in the ceremonies of Memorial Day; (c) in attending to the needs and relief of ex-service men and their families, or the needs of ex-service men for hospitalization or vocational training of those disabled.

The trustee to file its own bond. The costs of this proceeding and a fee of $50 to Daniel Dougherty, attorney for the trustees, to be deducted from the amount now in the hands of the prothonotary. The prothonotary to give notice to the parties, or their counsel of record, of this decree.

### Final decree

Now, to wit, July 20, 1931, the case coming before the court on exceptions of the defendants, members of Frank Ferrara Post No. 172 of the American Legion, and it appearing to the court that ample relief is given to the ex-service men by the government of the United States for hospitalization and vocational training, the decree nisi is so modified and the exceptions are dismissed, and the following final decree entered:

It is ordered, adjudged and decreed that the fund in controversy be awarded to the Mauch Chunk National Bank, in trust, for the Frank Ferrara Post No. 172 of the American Legion, to be invested by it in good and safe securities, and the interest arising therefrom to be paid to the said Post semi-annually for the purpose of maintaining a service station, and such sum or sums from the principal amount may be paid from time to time, on order of court, as may be needed for the following purposes: (a) In conducting mili-

tary funerals of ex-soldiers who die in the village of Nesquehoning or its adjacent territory; (b) in the ceremonies of Memorial Day; (c) in attending to the needs and relief of ex-service men and their families.

The trustee to file its own bond. The costs of this proceeding and a fee of $50 to Daniel Dougherty, attorney for the trustees, to be deducted from the amount now in the hands of the prothonotary.

From Jacob C. Loose, Mauch Chunk, Pa.